Merrell, J.
The plaintiff alleges that she is the owner of certain property abutting on Baltimore avenue in the city of Cincinnati, and that her property is improved with two brick dwelling-houses; that the city passed the necessary legislation to improve Baltimore avenue by constructing therein a sewer; that the city proceeded to construct the sewer in the fall and winter of 1913-1914 “by digging a trench in said Baltimore road to the depth of about eighteen or more feet in front of the plaintiff’s property, and that after laying said sewer in said excavation, filled the same with loose frozen earth without ramming or packing same.” It is then charged that by reason of “said negligent manner of performing said work the plaintiff’s houses and the ground upon which they stand was caused to slip.” The answer admits the passage by the city of the necessary legislation for construction of the sewer and then, denies generally.
At the trial the plaintiff showed by numerous witnesses that Baltimore road is built along the hillside, the ground occupied by plaintiff’s houses ascending to one side and the ground on the other side descending to a ravine; that Baltimore avenue has been in the present location for perhaps fifty years, and that to the knowledge of old residents in that neighborhood the ground there has never slipped before. Further, that the sewer trench was dug during cold, wintry weather; that the earth tossed up from the trench froze as it lay upon the street; that when the trench came to be back-filled the frozen earth was tossed in, together with snow and slush; that the sides of the trench at certain points caved in because of the cold and wet weather and because of insufficient sheeting; that the back-filling *348 of the trench was most inadequately rammed; that the back-filling sank very rapidly; that in the spring following the building of the sewer the whole roadway sank very rapidly, and that large cracks developed in the hillside, extending through the plaintiff’s buildings, which were caused to settle and the walls of which parted in places by as much as two or three inches. Upon the foregoing testimony the inference is strong that the damage to the plaintiff’s houses was the direct result of the negligent manner of back-filling the trench.
In addition to the evidence noted, the plaintiff, before closing her case, introduced the contract between the city of Cincinnati and the Connolly Construction Company, to which was awarded the work of building the sewer. At this point, the defendant interposed a motion to instruct a verdict for the defense.
Upon this motion only two points need be considered. On the part of the plaintiff it is contended that apart from negligence, in the absence of any proof of negligence, the plaintiff is entitled to recover by virtue of General Code, Section 3782, which provides that if “the owner or possessor of any lot of land in any municipality digs * * * to a greater depth than nine feet below the grade of the street or streets on which said lot or land abuts or # * * below the established grade of the street * * * and by said excavation causes any damage to any wall, house or other building upon the lots adjoining thereto, such owner or possessor shall be liable in a civil action to the party injured to the full amount of such damage.” It is the contention that the city is the owner of its streets and that as such is liable to an abutting owner for damage arising from an excavation deeper than nine feet.
However, a careful reading of the entire statute convinces me that the legislative intent was not to include a municipal corporation as to its ownership of the streets themselves. Reference is clearly had to a lot abutting on a street, and it seems to me to require a very forced construction to include in the foregoing phrase the street itself. Again, the damage of which the statute speaks is damage to a “lot adjoining,” a phrase which connotes a lot next to another lot and not a street upon which lots abut. The statute might be further discussed with *349 a view both to its technical implications and the ordinary and customary understanding of its phrases. I content myself with the opinion above expressed, which happens to be that voiced many years ago by this same court in the case of Allison v. Cincinnati, 13 Dec. Rep., 1010, 2 C. S. C. R., 462.
Of more importance and of more difficulty is the contention on behalf of the plaintiff that by the terms of the city’s contract with the construction company the city retained such control over the work as that the workmen employed by the contractor are to be considered as the servants or agents of the city rather than as the servants or agents of an independent contractor. The determination of this question is one that must be made by the court and by the court alone, at this or some other stage of the proceeding. This is so because the determination involves the construction of the written contract in evidence.
This I have examined with much care and have endeavored to separate out the various clauses which might be thought to place in the city the right to control the work. Among other expressions are found the following: “The contractor engages to do the work * * * under the direction of and to the satisfaction of the director of public service;” “subject to such changes as may be made from time to time by the director of public service;” “the work shall be commenced at such time as shall be designated by the chief engineer;” “the contractor must be on the work or have a competent foreman or superintendent to whom orders and instructions can be given;” (these if given to the foreman) “would have the same force as if given directly to the contractor;” “incompetent, unfaithful, disorderly workmen or foremen will not be permitted and such will be immediately discharged upon complaint of the engineer or the inspectors;” “when in the opinion of the director of public service public necessity requires it, or when the weather is unsuitable the director of public service may suspend the work for a reasonable time.”
And the following: “When the nature of the soil or other circumstances are such as in the opinion of the engineer to render it advisable to leave more bracing in the trench, such *350 shall be done to the extent deemed necessary by the engineer.” This clause of the specifications is the only one that can be said to leave to the city, through its proper officials, control of the manner of doing the work. This clause, upon its face at least, might bring the present case within the authority of Stork v. Philadelphia, 199 Pa. St., 462, wherein negligence in not shoring up the foundation of the plaintiff’s house where a subway was being constructed adjacent to it by the city for a railroad, was held to be the negligence of the city, it appearing that the city retained the right to determine when shoring up of foundations should be done. In the case cited, the city’s control as to shoring was clearly retained by the city for the purpose of protecting neighboring properties, whereas the clause of the specifications here in question might be thought to look merely to the proper construction of the sewer itself. However, whether or not any such distinction be tenable, it suffices for the present purposes to note that the petition does not allege as a ground of negligence that insufficient shoring was used or that the city engineer was negligent in not ordering additional bracing, the sole charge of negligence and the emphasis of the plaintiff’s testimony being directed to the character of the back-filling.
Referring now to the other items of the contract here in question, it may be said generally that the director of public service and the city engineer or the inspector on the work have reserved to them apparently certain functions. Upon analysis, however, it will be found that these functions are such as every owner of work under construction may properly exercise apart from contract. The independent contractor does not cease to be “independent” because he may have his attention called by the owner or the owner’s representative to the specifications for the work or to a failure to live up to the specifications. In every contract involving construction, it is the right of the owner or of the owner’s representative, and sometimes also his duty, to point out to the contractor or the contractor’s workmen some defect in actual construction or some failure to live up to a specified requirement. In such case the owner or his representative commonly orders the contractor to do the work in the way specified, or, in the absence of specifications, in a workman *351 like manner. Such an order is, in truth, not an order which the contractor or workman is bound to obey — it is rather a statement by the owner or his representative that unless the work is done as specified or in a workmanlike manner the contractor will not be paid and a breach of contract will be declared. For example, in the case at bar, the contract provides that incompetent workmen shall be discharged by the contractor upon complaint of the engineer or the inspector. This clause does not give the engineer or inspector control over the workmen upon the sewer, for if complaint were made and the contractor failed to discharge the men, the contractor would doubtless recover full compensation if he could establish that the work had been done as contracted for. Even this provision therefore, when analyzed, amounts to little if anything more than the right which any owner would have if the contract specifications were silent upon the point.
Many of the items in the specifications here in question might be separately considered and their intent analyzed in the light of the authorities. As to these items, however, it will be convenient to refer to the text and notes of Moll on Independent Contractors, pages 43-47 inclusive. Manifestly, of course, the question for determination here can not be solved in any case by considering isolated items of the specifications one by one and apart from the contents. The work of construction which such a question commits to the court, must be done with a view to the meaning of the contract as a whole. Considering the contract here involved by this process, and also analyzing the terms of the specifications conceivably most favorable to the view of the plaintiff, I am forced to the conclusion that the contract establishes that the sewer was built by independent contract. It follows that the responsibility for negligence in the work of sewer construction is the responsibility of the contractor and not that of the city itself.
The conclusion indicated that the work here in question was that of an independent contractor is not in conflict with the case of Morrissey v. City of Cincinnati, 14 C.C.(N.S.), 19, wherein the contract considered read: “The work to be commenced at such time after the date of contract as the Board of Public Serv *352 ice may order, and carried on in such places and in such manner as the engineer or inspector may direct.” The decision in the Morrissey case rests upon the words above underlined, and follows the almost universal line of authority. In the contract here in question it does not appear that the city retained any control of the manner of doing the work, except such control as every owner has by way of insisting upon a performance of the specifications.
It is true, of course, that the city officials, by insisting upon a strict compliance with the specifications for this sewer work, might have obviated the damage to the plaintiff’s houses, but this same ability to obviate consequential damages is present in practically every case of construction work. It follows, therefore, to make the owner responsible to third persons for the owner’s failure to insist upon a strict compliance with the contract, would do away entirely with the doctrine of an independent contractor, which is firmly intrenched in the law of this state.
. The plaintiff, in proof of her case, has shown damages to her buildings, but there is no proof of damage to her-property considered apart from the improvements thereon. It follows by the doctrine of the Keating case, 38 O. S., 141, that there can be no recovery in the absence of proof of negligence on the part of the defendant. It follows, also, that the negligence proved being that of an independent contractor and not that of the defendant, a verdict must be instructed for the defendant. The foregoing decision is thought to be necessitated by the cases of Cincinnati v. Penny, 21 O. S., 499; Keating v. Cincinnati, 38 O. S., 141; Cummings v. Toledo, 12 C. C., 650, the authorities hereinbefore cited, and many others.